UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN FITZGERALD STEVENS,

                Petitioner,                                Hon. Paul L. Maloney

v.                                                      Case No. 1:08-CV-84

BRUCE CURTIS,

                Respondent.

_____/


## REPORT AND RECOMMENDATION

           This matter is before the Court on Stevens' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Stevens' petition be **denied**.


## BACKGROUND

           As a result of events which occurred between August 27, 2000, and May 31, 2001, Petitioner was charged with (1) conducting a criminal enterprise; (2) acquiring and maintaining an interest in a criminal enterprise; (3) using a computer to commit a felony; and (4) being an habitual felon, fourth offense. Petitioner subsequently agreed to a plea bargain in which he agreed to plead guilty to the charge of conducting a criminal enterprise. (Plea Transcript, December 12, 2005, 3-4). In return, the prosecution agreed to dismiss the other charges and recommend "a five-year cap" on

Petitioner's minimum sentence. (Tr. 5). Petitioner was sentenced to serve 5-20 years in prison. (Sentence Transcript, February 8, 2006, 22). Asserting the following claims, Petitioner later moved in the Michigan Court of Appeals for leave to appeal his convictions:

> I.     Did the trial court commit reversible error in failing to give Defendant credit against his sentence for all time served where the police and prosecutor failed to exercise due diligence and violated Defendant's due process rights resulting in a lengthy delay in the issuance of an arrest warrant while Defendant was continuously incarcerated on another offense involving concurrent sentencing, thereby requiring resentencing?

> II.    Must a corrected presentence report be sent to the Department of Corrections which reflects the changes the trial court ordered at sentencing?

The Michigan Court of Appeals remanded the matter "to the circuit court for the purpose of allowing the court to correct the PSIR to reflect 8 rather than 10 prior felonies," but "[i]n all other regards" Petitioner's request was "denied for lack of merit." *People v. Stevens*, No. 269892, Order (Mich. Ct. App., June 12, 2006). Asserting the same claims, Petitioner later moved in the Michigan Supreme Court for leave to appeal. Petitioner subsequently moved to dismiss his appeal, however, a request which was granted. *People v. Stevens,* No. 131635, Order (Mich., Nov. 3, 2006).

Petitioner later asserted in the trial court a motion for relief from judgment. Petitioner's motion was denied. *People v. Stevens*, No. 05-04985-FH (Kent Cnty. Cir. Ct., Dec. 26, 2006). Asserting the following claims, Petitioner moved in the Michigan Court of Appeals for leave to appeal:

> I.     Did the court appointed appeals attorney fail to effectively present all meritorious arguments on

appeal protecting the Defendant's constitutional rights, and by failing to argue the total merits involving appellate review, including the unconstitutional plea acceptance at the plea hearing by the trial judge, did appellate counsel violate the standards set forth in the constitution concerning effective assistance of counsel?

II.     Did the appeals attorney commit reversible error by failing to argue the meritorious facts involving deprivation of the Fifth, Sixth, and Fourteenth constitutional amendment rights of Defendant on direct appeal along with the denial of effective assistance of counsel in failing to argue that the delay of four and one-half years in prosecution was due to prosecutorial misconduct and that such action/inaction violated the Speedy Trial Act?

III.    Did the appeals attorney fail to argue the valid merits concerning the fact that the Kent County Prosecutor's Office arraigned the Defendant in the wrong district court and thereby illegally binding the Defendant over for trial since the Walker District Court had no legal jurisdiction to hear the case in the first place? This omission on the part of the appeals attorney to raise the jurisdictional issues on direct appeal show a gross ineffective assistance of counsel claim. Furthermore, by swearing out complaint in Walker District Court to the charges of CCE/RICO, the prosecution committed an act of perjury, since the Walker District Court Magistrate had no authority to arraign Defendant in Walker it could not legally bind Defendant over for trial from Walker District. Would appeals result been different if appeals attorney had rightfully argued the validity of the arraignment?

IV.    Did the Circuit Court deny the Defendant's constitutional rights by denying the MCR 6.500 motion pursuant to MCR 6.508(D)(3), and by failing to at least hold an evidentiary hearing which denied the Defendant the opportunity to perfect the record for appellant review of the alleged ineffective assistance of counsel? Furthermore, did the trial

court deny the Defendant's constitutional rights by accepting an unconstitutional plea of guilty?

The Michigan Court of Appeals denied Petitioner's request "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Stevens*, No. 276216, Order (July 26, 2007). Plaintiff then moved in the Michigan Supreme Court for leave to appeal, asserting the following claims:

I.    Did the court appointed appeals attorney fail to effectively present all meritorious arguments on appeal protecting the Defendant's rights including the unconstitutional plea acceptance at the plea hearing by the trial judge, and in doing so provide ineffective assistance of counsel?

II.   Did the appeals attorney commit reversible error by failing to argue the meritorious facts involving the deprivation of the Defendant's Fifth, Sixth, and Fourteenth constitutional amendment rights when the trial lawyer failed to file an interlocutory appeal in the trial phase.

III.  Did the appeals attorney fail to argue the merits of the case regarding the fact that the Kent County Prosecutor's Office arraigned the Defendant in the wrong jurisdictional district court and thereby illegally binding the Defendant over to the Circuit Court.

IV.   Did the Circuit Court deny the Defendant's constitutional rights by denying the motion for remand along with the appeals court denial of the motion and by doing so failed to attempt to perfect the record involving the dereliction of duty on the part of the defense counsel exposing the ineffective nature of their defense.

V.    Did the trial court error in denying the Defendant's rights to have his sentence run concurrently with his 2001/2 sentence due to the fact that the Kent County Prosecutor's Office delayed four and one-half years

in bringing this case to trial in violation of MCR
6.004 (the 180 day rule) and the 14th Amendment of
the US Constitution.

The court denied Petitioner's request because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Stevens*, No. 134775, Order (Nov. 29, 2007). On January 24, 2008, Petitioner initiated the present action in which he asserts the following claims:

I. Did court appointed counsel fail to act in a constitutionally effective manner protecting the Defendant's rights by not disclosing the fact that he was innocent of the crimes charged and by misleading him into believing that he indeed committed the crimes charged, and in doing so violate the standards set forth by the Constitution concerning the effective assistance of counsel? Also, did the circuit court judge violate the Defendant's constitutionally protected rights when he accepted an invalid guilty plea without first ascertaining whether or not the Defendant actually committed the crimes charged?

II. Did the trial attorney commit reversible error by failing to inform the Defendant that by pleading guilty he would be giving up all rights to appeal the constitutional issues raised in the circuit court even after the Defendant made it clear that he wanted to pursue these issues and filed his own briefs in the circuit court before the plea hearing? Furthermore, did the trial attorney along with the appeals court attorney commit a blatant error by not pursuing the constitutional issues raised in the circuit court, and on appeal involving the prosecutorial misconduct in bringing charges after a delay of four and one-half years.

## STANDARD OF REVIEW

Stevens' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive

standards for granting habeas relief under the following provisions:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable

application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by

clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

Respondent asserts that Petitioner has procedurally defaulted the claims asserted in his habeas petition, precluding their review by this Court. While it appears that Petitioner may very well have procedurally defaulted his habeas claims, the Court opts to forego an analysis of the procedural default issue and will instead address the substance of Petitioner's claims, as such are without merit. *See e.g., Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("Judicial economy might counsel giving the [other] question

priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law").

## I.        Validity of Guilty Plea

As previously noted, Petitioner was initially charged with conducting a criminal enterprise; acquiring and maintaining an interest in a criminal enterprise; using a computer to commit a felony; and being an habitual felon. Petitioner subsequently entered into a plea agreement, pursuant to which he agreed to plead guilty to conducting a criminal enterprise in return for the dismissal of the three other charges and a sentencing recommendation. Petitioner now asserts that his conviction must be set aside because (1) his plea was not made knowingly or voluntarily; and (2) the trial judge failed to determine whether Petitioner actually committed the crime to which he pleaded guilty.

A guilty plea is valid if it is made "knowingly, voluntarily, and intelligently." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also*, *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (to be valid, a guilty plea must be made "voluntarily and intelligently," with "knowledge of the relevant circumstances and likely consequences"). Determining whether a plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *Dutton*, 17 F.3d at 153. To prevail on his claim, Petitioner must demonstrate "such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment." *Ray v. Cockrell*, 2003 WL 22070892 at *3 (N.D. Tex., Feb. 27, 2003) (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)); *Thomas v. Cain*, 2007 WL 2874778

at *13 (W.D. La., Sept. 7, 2007) (same).

Respondent bears the burden of establishing that Petitioner's guilty plea was voluntary, intelligent, and knowing. *See Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004) (*reversed in part on other grounds* 545 U.S. 175 (2005)). This burden is generally satisfied "by producing a transcript of the state court proceeding," because "[a] state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent and knowing." *Stumpf*, 367 F.3d at 600 (citing *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993)).

The transcript of the proceeding in which Petitioner pleaded guilty reveals that Petitioner's plea was voluntary and intelligent:

| | |
|---|---|
| The Court: | Mr. Stevens, you understand you're being charged here in Count One with maintaining -- or conducting a continuing criminal enterprise, and that the maximum period of imprisonment is 20 years? |
| Defendant: | Yes. I do. |
| The Court: | And I'll further advise you that if you plead guilty here today to this charge, you'll be giving up any right you would have to a trial and all the rights you would have at such trial.<br><br>Do you understand that? |
| Defendant: | Yes, sir. |
| The Court: | And you have read and signed the advice of rights form, correct?[1] |

---

[1] The Advice of Rights form that Petitioner signed informed him of the following:

You have offered to plead guilty or nolo contendere in this matter. Before accepting your plea, the court must be convinced that you understand that, if your plea is accepted, you will not have a trial of any kind and you will be giving up the rights you would have at a trial. These include:

| | |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | And you understand those rights? |
| Defendant: | Yes, sir, I do. |
| The Court: | You understand that you're giving up or waiving those rights by pleading guilty? |
| Defendant: | Yes, sir, I do, your Honor. |
| The Court: | You also understand you will not have a trial? |
| Defendant: | Yes, sir. |
| The Court: | I'll further advise you that if your plea is accepted here today, you'll be giving up any claim that the plea was the result of promises or threats that were not disclosed at this proceeding or that it was not your own choice to enter this plea. |
| | Do you understand that? |
| Defendant: | Yes, sir, I do. |
| The Court: | And, also, do you understand that any appeal from the conviction and sentence pursuant to this plea will be by application for leave to appeal and not by right? |
| Defendant: | Yes, sir, I do. |
| The Court: | All right. |
| | Mr. Stone, a plea agreement? |

---

1. the right to be tried by a jury;
2. the right to be presumed innocent until proven guilty;
3. the right to have the prosecutor prove beyond a reasonable doubt that you are guilty;
4. the right to have the witnesses against you appear at the trial;
5. the right to question the witnesses against you;
6. the right to have the court order any witnesses you have for the defense to appear at the trial;
7. the right to remain silent during trial and to not have that silence used against you; and
8. the right to testify at the trial if you want to testify.

(Dkt. #26).

| | |
|---|---|
| Mr. Stone: | Your Honor, in exchange for the successful plea and sentencing to Count One, we'll dismiss the remainder of the counts and the supplemental information, and we're recommending a five-year cap on the sentence in this particular case. |
| The Court: | Five-year cap on the minimum sentence? |
| Mr. Stone: | That's correct. |
| The Court: | Mr. Trusock? |
| Mr. Trusock: | That is a complete statement of the plea agreement. |
| The Court: | Mr. Stevens, is that the complete plea agreement? |
| Defendant: | Yes, sir, it is, your honor. |
| The Court: | Has anyone promised you anything in addition to that? |
| Defendant: | No, sir. |
| The Court: | What is your plea? |
| Defendant: | My plea is guilty. |
| The Court: | Has anyone threatened you in any way to plead guilty? |
| Defendant: | No, sir. |
| The Court: | Is it your own choice to plead guilty? |
| Defendant: | Yes, sir, it is, your Honor. |
| The Court: | Tell me, then, Mr. Stevens, on or about and between the dates of August 27 of the year 2000 and May 31 of the year 2001, at 1117 West Leonard Court, city of Walker, did you fraudulently obtain and use personal information on certain individuals? |
| Defendant: | Yes, sir, I did. |

| | |
|---|---|
| The Court: | And for your own financial gain? |
| Defendant: | Yes, sir, your Honor. |
| The Court: | And this was more than one individual on more than one occasion? |
| Defendant: | Yes, sir, your Honor. |
| The Court: | All right. |
| | Mr. Stone, you're more familiar with this charge than I am, any more information that I need to receive from Mr. Stevens? |
| Mr. Stone: | I would just -- Mr. Stevens, the allegations that are listed in the information list that at least on two occasions you did in regard to this scheme you had set up to obtain the personal information from several of the victims, whose names include Dennis Schichtel and others, Kevin Hugh Ferguson and others, and you attempted to use this for your own financial gain, is that correct? |
| Defendant: | Yes, sir. |
| Mr. Stone: | And it happened on multiple occasions? |
| Defendant: | More than one, yes. |
| Mr. Stone: | Thank you, I have no further questions. |
| The Court: | All right. |
| | Mr. Stevens, the Court is satisfied from your testimony here this afternoon you are in fact guilty. I do accept your plea of guilty. I find that it is understanding, voluntary, and accurate. |

(Plea Transcript, December 12, 2005, 4-8).

It is clear from the transcript of the plea hearing that Petitioner was aware of the crime to which he was agreeing to plead guilty, including the potential punishment if convicted

13

thereof, as well as the precise nature of the various rights he was surrendering by pleading guilty. Specifically, Petitioner acknowledged that he understood that by pleading guilty he was surrendering the following rights: (1) the right to a trial; (2) the right to be presumed innocent until proven guilty beyond a reasonable doubt; (3) the right to have the witnesses against him appear at trial; (4) the right to question the witnesses against him; (5) the right to compel the attendance at trial of any witness on his own behalf; (6) the right to remain silent at trial; (7) the right to not have any such silence used against him at trial; and (8) the right to testify at trial.

Petitioner acknowledged that by pleading guilty he was "giving up any claim that the plea was the result of promises or threats that were not disclosed at this proceeding or that it was not [his] own choice to enter this plea." (Tr. 5). Petitioner also acknowledged that he understood that if he pleaded guilty, "any appeal from the conviction and sentence pursuant to this plea will be by application for leave to appeal and not by right." (Tr. 5).

The record contains no evidence that Petitioner was "confused" regarding the crime to which he agreed to plead guilty. The precise nature of the plea agreement was clearly explained to Petitioner, who acknowledged his understanding thereof. The potential punishment for such was also clearly explained to Petitioner. Considering the multitude of charges Petitioner faced, his decision to accept a plea bargain was not unreasonable. In sum, the record contains no evidence supporting Petitioner's claim that his plea was not made knowingly, intelligently, and voluntarily. Accordingly, the Court concludes that this particular claim is without merit and cannot form the basis for habeas relief.

Petitioner also asserts that his guilty plea is invalid because the trial judge failed to ascertain whether there existed a sufficient factual basis that Petitioner committed the crime to which

he was pleading guilty. This claim is without merit. *See, e.g., Cannon v. Walton*, 2010 WL 1253484 at *6 (S.D. Ohio, Mar. 4, 2010) ("to the extent petitioner claims his plea was invalid because the court did not establish a factual basis for the "four-in-six" charge, this claim does not warrant relief as there is no federal constitutional requirement that a state court establish a factual basis for a guilty plea"); *Spencer v. Pratt*, 2009 WL 4884972 at *18 (E.D. Mich., Dec. 11, 2009) ("a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review"); *Walker v. Curtin*, 2009 WL 1974305 at *9 (W.D. Mich., June 17, 2009) ("[t]he state courts are not constitutionally required to establish a factual basis for an otherwise voluntary and intelligent plea").

## II.        Ineffective Assistance of Counsel

Petitioner asserts that his trial attorney rendered ineffective assistance by (1) failing to inform Petitioner that he was innocent of the crime to which he pleaded guilty, and (2) failed to inform Petitioner that he could have entered a conditional guilty plea, thereby preserving his ability to assert on appeal the claim that his constitutional right to a speedy trial had been violated.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). In the context of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Thus, to satisfy the prejudice requirement, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Railey*, 540 F.3d at 415 (6th Cir. 2008) (quoting *Lockhart*, 474 U.S. at 58-59).

Petitioner faults his attorney for failing to inform him that he was innocent of the crime to which he pleaded guilty. Petitioner's argument, however, ignores that he acknowledged, under oath in open court, that he committed the crime of conducting a criminal enterprise. Petitioner has failed to demonstrate that his admission, made under oath, was untruthful. Because Petitioner has failed to establish that he was innocent of the crime to which he pleaded guilty, he cannot establish that his attorney's performance was deficient.

Petitioner has also failed to establish that he was prejudiced by his attorney's allegedly deficient performance. Petitioner was charged not just with the crime to which he pleaded guilty (conducting a criminal enterprise), but three other offenses as well: (1) acquiring and maintaining an interest in a criminal enterprise; (2) using a computer to commit a felony; and (3) being an habitual felon, fourth offense. The potential sentences Petitioner faced if convicted of these crimes were substantial.

If convicted of acquiring and maintaining an interest in a criminal enterprise, Petitioner faced a sentence of 20 years in prison and a $100,000 fine. Mich. Comp. Laws §§ 750.159i; 750.159j. If convicted of using a computer to commit a felony, Petitioner faced a sentence of 20 years in prison and a $20,000 fine. Mich. Comp. Laws § 752.797(3)(f). Furthermore, any sentence Petitioner might have received for a conviction of this offense could be served *consecutively* to the sentence for acquiring and maintaining an interest in a criminal enterprise. Mich. Comp. Laws § 752.797(4). Finally, if also convicted of having previously been convicted of four previous felonies, Petitioner faced a sentence of life in prison. Mich. Comp. Laws § 769.12(1)(a).

To establish that he was prejudiced by his attorney's allegedly deficient performance, Petitioner must establish that he would have not accepted a plea bargain, but would have instead opted to go to trial on all four charges. Petitioner does not argue that he is innocent of the other charges he faced. Considering that Petitioner faced a possible sentence of life in prison if convicted of these other charges, Petitioner has failed to establish that, even assuming he was innocent of the charge of conducting a criminal enterprise, he would have declined the plea bargain and instead proceeded to trial. Accordingly, this particular claim is without merit.

Petitioner also faults his attorney for failing to inform him that he could have entered a conditional guilty plea, thereby preserving his ability to assert on appeal the claim that his constitutional right to a speedy trial had been violated. Petitioner's claim is based on a significant misunderstanding of the law regarding his right to a speedy trial.

In May 2005, Petitioner was charged with the offense to which he pleaded guilty. Petitioner complains, however, that the prosecuting attorney could have brought the charges in

question in "2001 or early 2002." Petitioner asserts that this delay in initiating the charges against him violated his constitutional right to a speedy trial. As courts have long recognized, however, the Sixth Amendment right to a speedy trial is not triggered until an individual is formally charged with a crime or arrested and held to answer a criminal charge. *See, e.g., United States v. Marion*, 404 U.S. 307, 320-21 (1971) ("it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment"); *United States v. Loud Hawk*, 474 U.S. 302, 310-12 (1986) ("[t]he [Speedy Trial] Clause does not, for example, limit the length of preindictment criminal investigation even though 'the [suspect's] knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life'"); *United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007).

Thus, the alleged delay between the date charges *could* have been initiated and when they actually were initiated did not violate Petitioner's right to a speedy trial. Moreover, the amount of time that transpired between the date Petitioner was charged (May 2005) in this matter and when he pleaded guilty (December 2005) did not violate Petitioner's right to a speedy trial.

When evaluating whether Petitioner suffered a violation of his right to a speedy trial, the Court must examine four factors: (1) whether the delay was uncommonly long, (2) the reason for the delay, (3) whether Petitioner asserted his right to a speedy trial, and (4) whether Petitioner suffered prejudice as a result of the delay. *See United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The length of the delay is a threshold question. Unless the delay which Petitioner experienced was uncommonly long, there is no need to consider the remaining factors. *See*

*Schreane*, 331 F.3d at 553. The amount of time which transpired between the issuance of the complaint and the plea hearing was 286 days. This delay does not implicate the right to a speedy trial. *See Cowart v. Hargett*, 16 F.3d 642, 646-47 (5th Cir. 1994) (a delay of 349 days was not a violation of the right to a speedy trial); *Singh v. Fischer*, 2004 WL 2999106 at *5 (E.D.N.Y., Dec. 29, 2004) (383 days not a violation of the right to a speedy trial); *Smith v. Walsh*, 2003 WL 22670885 at *4 (E.D.N.Y., Oct. 20, 2003) (306 day delay not a violation of the right to a speedy trial). Even assuming, however, that the delay in this matter was "uncommonly long," Petitioner has failed to establish that the delay was attributable to the prosecution or that he suffered prejudice resulting therefrom.

Finally, to the extent that Petitioner's claim is interpreted as asserting the claim that his due process rights were violated by the alleged delay in charging him with the crime in question, the result is the same. It is well established that the Constitution protects criminal defendants "against excessive or prejudicial pre-indictment delay." *United States v. Campbell*, 525 F.Supp.2d 891, 894-95 (E.D. Mich. 2007) (citing *United States v. Lovasco*, 431 U.S. 783, 788 (1977)). To establish that the delay in question violated his constitutional rights, Petitioner must demonstrate that (1) the delay caused "substantial prejudice" to his right to a fair trial; *and* (2) the delay was "an intentional device by the government to gain a tactical advantage." *Campbell*, 525 F.Supp.2d at 895 (citing *Marion*, 404 U.S. at 324). Petitioner has presented no evidence that either element of this analysis is satisfied.

In sum, the timing of events in this matter did not violate Petitioner's constitutional rights. Thus, the alleged failure by Petitioner's counsel to advise Petitioner that he could conditionally plead guilty thereby preserving his right to assert a speedy trial claim on appeal does

not constitute ineffective assistance of counsel.

Petitioner also asserts that his appellate counsel rendered ineffective assistance by failing to assert on appeal the claims discussed above. The Constitution does not impose on appellate advocates the obligation to assert any and all perceived claims. As the Supreme Court has recognized, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has also observed, it is difficult to demonstrate that an appellate attorney has rendered deficient performance where he presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

In sum, as discussed above, the issues that Petitioner asserts should have been asserted on appeal are without merit. Accordingly, Petitioner cannot demonstrate that his appellate counsel's performance was deficient or that he was prejudiced thereby. This particular claim, therefore, is without merit. *See Buell v. Mitchell*, 274 F.3d 337, 352 (6th Cir. 2001) ("appellate counsel was not deficient for failing to raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points"); *Burton v. Renico*, 391 F.3d 764, 782-83 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Stevens' petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: June 2, 2010                          _/s/ Ellen S. Carmody_____
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge